### McCLURE et al. v. BAILEY.

### No. 2766.

Court of Civil Appeals of Texas. Waco.
Feb. 12, 1948.

Rehearing Denied March 18, 1948.

672

Chas. J. Lieck and O. Shelley Evans, both of San Antonio, for appellants.

Moursund, Ball, Moursund & Bergstrom, of San Antonio, for appellee.

LESTER, Chief Justice.

This is a suit brought by Bessie and Nevada McClure to have the wills of Andrew J. McClure and his wife, Mrs. Emma McClure, construed.

On April 13, 1913, Andrew J. McClure executed the following will:

"State of Texas
"County of Bexar

"This is the last Will and Testament of me, Andrew J. McClure, of the City of San Antonio, County of Bexar, State of Texas, hereby revoking all former Wills made by me, being of sound mind and memory.

"I give and bequeath to my beloved wife, Emma McClure, of the City of San Antonio, County of Bexar, State of Texas, should she survive me, all the property real personal and mixed of which I, may die seized or possessed of, or to which I may be entitled to at the time of my decease, and in the event of the death of both of us, then in that event, then all the rest residieu and remainder of my estate, real personal, and mixed, of which I may die seized or possessed of or which I may be entitled to after the death of my beloved wife, and myself, if any of my said estate is left, then I give and bequeath all my said interest in my said estate both real and personal to Nevada McClure, and Bessie McClure, my sisters, all of Williams County, State of Texas, share and share alike.

"I nominate constitute and appoint my beloved wife Emma McClure, as Independent Executrix, of this my last Will and Testament, I further direct that no bond or security shall be required or given by her for the proper discharge of her duties, and I wish my estate to be kept out of the probate court, other than to file this Will and return an inventory of my said estate.

"Andrew J. McClure.

"Signed published and declared by the said Andrew J. McClure, as for his last Will and Testament, in our presence, who in his presence, and in the other presence of each other, have hereunto set our names as subscribing witnesses this the 26th day of April, A. D. 1913, at San Antonio Texas.

"D. Campbell
"John P. Campbell."

On the same day Mrs. Emma McClure executed her will. Both of said wills contained exactly the same language, except where Andrew J. McClure used the words "to my beloved wife, Emma McClure," she used the words "to my beloved husband, Andrew J. McClure," and where Andrew J. McClure's will provided that after the death of his wife the residue and remainder of his estate should go to his two sisters, Nevada and Bessie McClure, the will of Mrs. McClure provided that after the death of her husband the residue and remainder of her estate should go to Gilbert Russell Bailey, her nephew, and Laurene Bailey, her niece. These wills were written on the same kind of paper and apparently on the same typewriter and were executed before the same witnesses. Laurene Bailey, the niece, died in 1917, and Mrs. McClure, on April 17, 1917, executed a codicil to her original will, in which she provided:

"1st: It is my will that all my interest in the real and personal property after the death of my beloved husband, Andrew J. McClure, shall revert to Gilbert Russell Bailey, my nephew.

"2nd: It is my will and I hereby direct that if Gilbert Russell Bailey shall die without issue or shall die before my death, that all my interest in the estate shall go to the heirs of B. A. Gower."

B. A. Gower was a relative of Mrs. McClure.

Andrew J. McClure died the latter part of 1930 or the early part of 1931, and his will was admitted to probate. Mrs. McClure was appointed independent executrix of his estate and she duly qualified as such and took over the property of her husband and proceeded to manage and control it up to the time of her death. She died on or about the 16th day of February, 1946, and soon after her death her will and codicil were admitted to probate and her nephew, Gilbert Russell Bailey, was appointed independent executor of her estate and is now acting in that capacity.

Mr. and Mrs. McClure had no child of their own. Mrs. McClure had a nephew, the appellee, and his sister, who were children of Mrs. McClure's deceased sister, and these children were living in the McClure home. Andrew J. McClure had two unmarried sisters, Nevada and Bessie McClure, who were living in the home of and taking care of their widowed mother.

After the conclusion of the evidence the trial court instructed the jury to return a verdict for the appellee, Gilbert Bailey, and entered judgment in his favor. Appellee says that such action upon the part of the court was proper for the reason that Mrs. McClure, by surviving her husband, took, under the plain and express language of his will, a fee simple absolute estate, or, in the alternative, an estate in fee with executory devise or contingent bequest to appellants of only that portion of the property that Andrew J. McClure owned at the time of his death and which was still in the possession of Mrs. McClure at the time of her death.

Appellants contend that the evidence raised the following fact issues:

"1. Did Andrew McClure's will intend to give his wife a life estate in his share of the community property with full power of disposition, and with remainder over to his two sisters of whatever was not disposed of at the death of his wife? or

"2. Did Andrew McClure intend by his will to give his wife a fee simple estate to his part of the community property, without any restrictions?

"3. Did Andrew McClure's will intend for his two sisters, Nevada and Bessie, to

have his half of his estate, if any remained, after the death of both Andrew McClure and Emma McClure?

"4. Did Andrew McClure's will by the very words he used in writing his will, intend that the proceeds of any sale become a part of the corpus of the estate and take the place of the part of the estate sold or transferred?"

■ The criterion in the construction of a will is to arrive at the intention of the testator from the four corners of the instrument itself, including all of the provisions and words contained therein. If the will is ambiguous, then extraneous evidence may be admitted by the court to shed light on the exact surroundings of the testator at the time he executed the same, for the purpose of aiding the court in determining in what sense the language contained in said will was used. The law lays down certain rules to be followed in the construction of wills, but as said above, the first and supreme rule of them all in importance is the ascertainment of the intention of the testator, and when such intention is once determined it must be given effect and technical rules of construction will not be applied if, by doing so, the general intent of the testator would be defeated, but in such event the rules must yield to the intention as manifested by the terms of such instrument as a whole as long as they are lawful and not against public policy. McMurray et al. v. Stanley et al., 69 Tex. 227, 6 S.W. 412; Darragh v. Barmore, Tex.Com.App., 242 S.W. 714, 717; Gilliam v. Mahon Tex.Com.App., 231 S.W. 712; Jones Unknown Heirs et al. v. Dorchester, Tex.Civ.App., 224 S.W. 596; Haring et al. v. Shelton et al., 103 Tex. 10, 122 S.W. 13; Neely v. Brogdon et al., Tex. Civ.App., 214 S.W. 614, and Tex.Com.App., 239 S.W. 192. It is also a well recognized rule in the construction of wills that words or clauses or sentences, or even whole paragraphs, may be transposed to any extent with a view of showing such intention, and in some instances words and limitations may be transposed, supplied or rejected in arriving at the real intention of the testator. Hawes & Duncan v. Foote, 64 Tex. 22, 27; Darragh v. Barmore, Tex.Com.

App., 242 S.W. 714, 717; Neely v. Brogdon, Tex.Com.App., 239 S.W. 192; Johnson et al. v. Goldstein et al., Tex.Com.App., 215 S.W. 840; Pond v. Bergh, 10 Paige 140.

■ Now, in the light of these rules, the question is as to what character of estate the will of Andrew McClure vested in his wife. As a matter of law, was it a fee simple estate absolute, or was it a conditional fee with executory devise or contingent bequest to the appellants, or was it an issue of fact to be determined by the jury as to whether it was the intention of the testator to vest in his wife only a life estate with power of disposition? There is no doubt but what the words: "I give and bequeath to my beloved wife, Emma McClure, of the City of San Antonio, County of Bexar, State of Texas, should she survive me, all the property, real, personal and mixed of which I may die seized or possessed of or which I may be entitled to at the time of my decease," if standing alone, would vest in Mrs. McClure, since she survived him, an absolute fee without remainder to anyone. But the testator did not stop there, but in the same sentence he provided: "and in the event of the death of both of us, then in that event, then all the rest, residue and remainder of my estate, real, personal and mixed, of which I may die seized or possessed of or which I may be entitled to after the death of my beloved wife and myself, if any of my said estate is left, then I give and bequeath all my said interest in my said estate, both real and personal, to Nevada' McClure and Bessie McClure, my sisters." Construing the first part of said clause with that of the latter, we are of the opinion that it was the intention of the testator that his sisters should receive that portion of his property that remained in his wife's possession at the time of her death. Therefore, the first part of said clause must yield to the second part. Construing the will as a whole in the light of the rules above set out, we think that it is clearly manifested that he intended that his estate devised to his wife should not be in fee simple absolute, but that it should be a defeasible or a conditional fee. It will

be observed that the first time the testator refers to or mentions the residue or remainder of his estate is in the second part of said clause, in these words: "and in the event of the death of both of us" (or, in other words, after the death of both of us is what is clearly inferred from the words used), "then in that event, then all the rest, residue and remainder of my estate, real, personal and mixed, of which I may die seized or possessed of or which I may be entitled to after the death of my beloved wife and myself, if any of my said estate is left then I give and bequeath all my said interest in my said estate, both real and personal, to Nevada McClure and Bessie McClure, my sisters." Putting his words used in the latter part of said clause in a more condensed form, this is what he really said or what can be reasonably inferred from the words used by him: "After the death of his wife (if she survived him) if any of his estate that he possessed at his death remained in the possession of his wife at her death, it should go to his two sisters. Now, what remainder was he referring to if it was not that portion of his property, if any, remaining after the death of his wife? He certainly would not have referred to his estate remaining in the manner in which he did if he had not intended for someone to have the use of it after his death, and that someone certainly must have been no other than his wife. If this was not his intention he could have very easily said so in clear terms. If he had in mind at the time he executed the will, as contended by appellee, that he would in all probability dispose of some of his estate after the date of the execution of his will and not be in possession of all of it at the time of his death, he referred to the rest, remainder or residue of his estate in that sense, but if he did so, why didn't he insert that provision, or a similar one, in the clause in which he devised the property to his wife? He made no provision for the payment of debts and made no other disposition of his property in his will prior to the clause in which he devised his property to his wife in the event she survived him, but after devising the property to her he followed it with providing that the rest, residue and remainder of his estate, or any

interest he had therein after the death of his wife, should go to his two sisters. It appears to us that at the time he executed his will the first object of his bounty was his wife, and that her enjoyment, comfort and welfare was the controlling thought in his mind and that it was his desire that his wife should not be hampered or restricted in the enjoyment and use of his estate during her life, and to that end he intended to confer upon her the right to use and dispose of any or all of his estate in any manner she might desire while she lived, but if she failed to use or dispose of all of said estate and there remained any portion thereof in her possession at her death, then such portion so remaining in her possession should go to his two sisters. Whether these sisters would ever receive any of said estate under the terms of said will depended entirely upon the contingency of whether Mrs. McClure would have any portion of said estate in her possession at the time of her death. If she died possessed of any of said estate, then the sisters would be entitled to it; if she did not have any of it remaining in her possession at that time, then the right or chance of said sisters to receive any portion thereof would be defeated because there would be nothing for them to receive. It has been held that: "Although an estate in fee simple is devised, it may be limited by a subsequent valid provision that the estate shall go over to others upon the happening of a certain contingency. The estate, when so limited, is still a fee, for the reason that it will last forever if the contingency does not happen, but so long as it is possible that the contingency may happen, it is a base or conditional fee." McMurray v. Stanley, supra; Darragh v. Barmore, supra; Cragin v. Frost Nat. Bank, Tex.Civ.App., 164 S.W.2d 24; West v. Glisson, Tex.Civ.App., 184 S. W. 1042 (writ ref.); Norton v. Smith, Tex.Civ.App., 227 S.W. 542 (writ dism.).

So we are of the opinion that the will is not ambiguous as to the intent of the testator as to the character of estate he intended to vest in his wife, and that the will as a whole shows that he intended to vest his widow with a base or conditional fee.

Appellants contend that they are not only entitled to that portion of the property

received by Mrs. McClure under her husband's will which was in her possession at the time of her death, but that they are entitled to share in the property purchased with the proceeds from the sale of his property which was in the possession of Mrs. McClure at the time of her death, and also the proceeds from the sale of his property that were in her possession at the time of her death. In support of such contention they cite and rely mainly upon Mitchell v. Edds, Tex.Civ.App., 181 S.W.2d 323, by the San Antonio Court of Civil Appeals, affirmed by the Supreme Court in 143 Tex. 307, 184 S.W.2d 823, 158 A.L.R. 470. That case was brought to construe the will of O. D. Rhode and the material provisions of his will were:

"Item 3. I will, devise and bequeath to my wife, Julia E. Rhode, all the property, real, personal and mixed, of whatsoever kind and character and wheresoever located or situated, of which I may die seized and possessed, for and during her natural life, with remainder as hereinafter provided.

"Item 4. I hereby appoint my wife, Julia E. Rhode, as independent executrix of this my last will and testament with full power and authority in her to bargain, sell, convey, mortgage, or otherwise dispose of or encumber, all or any part of my property, real, personal and mixed, for any reason or purpose she may desire in the same manner and as fully and completely as I could do if living, and to use the proceeds of such sale, mortgage, or other encumbrance as she may see fit and deem proper, and if she uses or disposes of all or any part of my property, or the proceeds thereof, she shall in no event be required to account to anyone therefor. * * *

"Item 6. If, after the death of my wife, Julia E. Rhode, and the death of said Minerva Hightower, any portion of my estate remains, then the same shall descend and pass to my heirs according to the laws of descent and distribution of the State of Texas, and may after the death of both my said wife and said Minerva Hightower, and not until then, be partitioned among those so entitled to receive the same under said laws of descent and distribution."

The Court of Civil Appeals and the Supreme Court held that Mrs. Rhode was vested only with a life estate in her husband's property, with an express power of disposition, and that she held in trust for the heirs of her husband not only the property received under the will in her possession at the time of her death, but she also held in trust for his heirs the property in her possession that was purchased with the proceeds from the sale of any property she came into possession of under said will, as well as any proceeds from the sale of any of such property that were in her possession at the time of her death. This holding was based upon the provisions of said will, which clearly manifested the intention of the testator that his wife should take only a life estate, with express power of disposition, and that this will further clearly manifested that the proceeds from the sale of the property, together with the property that was purchased with such proceeds that were in her possession at the time of her death should be considered a part of the estate and that he intended for his heirs to receive the same upon her death.

Appellee contends that appellants are not entitled to share in the proceeds of the property that has been purchased with the proceeds of such sales, or the proceeds from the sale of such property that was in Mrs. McClure's possession at the time of her death, and cites West v. Glisson, supra; Norton v. Smith, supra; Feegles v. Slaughter, Tex.Civ.App., 182 S.W. 10; McMurray v. Stanley, supra.

The case of McMurray v. Stanley involved the construction of the will of Mrs. F. A. Bagley. The material clauses of that will were:

"Third. It is my will and desire that my beloved husband shall have all my property, both real, personal, and mixed, whatever the interest may be, whether separate or community interest; and that he shall have full power and control over same, to use and dispose of as he may desire.

"Fourth. It is my will and desire that at his death, should he have any of said property still remaining in his possession not disposed of or used by him, that the

same shall be given by him to my nieces, Jessie McMurray and Flora Brown, daughters of Vina and Taylor Brown."

The court, speaking through Judge Stayton, held that the husband was vested with an estate in fee in the entire property, but it was in trust for the nieces except as their right was limited by the right given to him to use and dispose of the property during his lifetime; and concerning proceeds of sale the court also said [69 Tex. 227, 6 S.W. 417]:

"The plaintiffs, however, assert, in the petition, a right to follow the proceeds of any property which belonged to the estate of Mrs. Bagley at the time of her death, which was subsequently disposed of by her husband. We think the true construction of the will limits the right of the plaintiffs to a recovery of property of the estate of Mrs. Bagley which was in the actual or constructive possession of N. G. Bagley, and undisposed of by sale or otherwise, at the time of his death. Such is the letter of the will, and there is nothing in the relationship of the parties, or the purposes for which the power to use and dispose of the property was most probably given to the husband, which would authorize a holding that the testatrix intended that her nieces should have the right to follow and have the proceeds of any part of her estate that might be disposed of by her husband."

The case of Norton v. Smith, supra, was brought to construe the will of George P. Rains. The material portions of that will were:

"First. It is my will that my wife, M. E. Rains, have all I may die seized of, consisting of lands, money, merchandise, bonds, notes, accounts," etc.

"Third. That, at her death, she will to our respective families whatever she may have, making an equal division thereof, between the two families.

"Fourth. And lastly, I do appoint my wife, the said M. E. Rains, my executrix, who will settle my debts, collect my claims and sell lands, etc., as she may wish without giving any bond whatever."

Pertaining to the proceeds from the sale of the property devised, the court had this to say [227 S.W. 547]:

"Now, it is the contention of appellants here that they are not only entitled to share in such of the property of George P. Rains as passed to his surviving wife under the will and remained on hand in kind at the time of her death, but that they are also entitled to share in such property as she owned at the time of her death which was purchased with proceeds of property which came to her under the will. This contention we deny. Mrs. Rains, as we have shown, took title in fee to all property devised to her by her husband, George P. Rains, and, under the express provisions of the will, had the absolute right of disposition of same, and no interest, under the terms of the will, was vested in the appellants, but their interest therein depended upon the condition that such property so devised to Mrs. Rains should not be disposed of by her in the exercise of her rights and powers under the will. As we have stated, Mrs. Rains, under the will, took title in fee to all the property devised to her, with the conditional limitation that so much of same as might not be disposed of and should be owned by her at the time of her death should be shared in to the extent of one-half by the members of the testator's family. Mrs. Rains having, during her lifetime, exercised the right and power expressly conferred upon her by the will to sell and dispose of the property thereby devised, its proceeds cannot be followed and claimed by the appellants in this case, whose interest therein was dependent upon the condition that Mrs. Rains should not dispose of such property during her lifetime. * * *

"It follows from what we have said that the eighth assignment of error must be overruled. Mrs. Rains having the right under the will to make absolute disposition of the property devised to her, and having exercised that power, the appellants have no interest in the proceeds of any sales or disposition made by her of the property."

Feegles v. Slaughter, supra, [182 S.W. 10] was a suit to construe the will of J. B. D. Young, the material portions thereof being:

"I. It is my will and desire, and I do hereby bequeath all my property, both real and personal, to my beloved and faithful wife, Mrs. L. V. Young. * * *

"V. I further desire and hereby will and direct that upon the death of my wife the property which she then owns shall be equally divided between her relatives and my relatives, it being intended that she shall have full power to control and dispose of the property during her life."

The court held that the will did not limit the estate vested in Mrs. Young to a life estate, but that she was vested with the fee; and as to the right to pursue the proceeds, had this to say:

"As to the right of appellant to pursue the proceeds of the property sold by Mrs. Young, we are of the opinion that this proposition is settled adversely to appellant by the opinion in the McMurray case, supra."

In West v. Glisson, supra, the will of Mrs. Fannie Calvert was construed. Her will provided:

"(2) It is my will and desire, that all the property, both real and personal, I may die seized and possessed of, after the payment of my just debts, together with all the expenses incident to the probating of this will, shall pass to and vest in fee simple in my beloved daughter, Annie Calvert, and her heirs.

"(3) It is my desire and will that if said Annie Calvert die without heirs of her own, then the property or residue of same herein bequeathed shall pass to and vest in fee simple in my granddaughter, Lula West."

The court held that under the terms of said will her daughter was vested with a determinable fee, and further held that "the will * * * did not, in express terms, give the legatee power to dispose of the property; but we think the expression in the third clause 'residue of same,' when taken in connection with the expression in the second clause, 'fee simple' should be construed to give the appellee a life estate in the property of the testatrix, with power to dispose of the same or any part thereof; and that, if any of said property should remain undisposed of at the death of appellee, the same will become the property of Lula West as the residuary legatee." Just as in the instant case, the will of Andrew J. McClure did

not in express terms give to his wife the power to make disposition of his property while she lived, but the terms of said will and the character of the estate devised to her, being a conditional fee, carried with it such power, and that power to dispose of and use the estate as she saw fit during her lifetime was general and there were no limitations or restrictions whatsoever expressed as to the manner or purpose of such disposition. Appellants concede that she had such power and could have dissipated the estate until there was nothing left at the time of her death. Darragh v. Barmore, supra, point 17.

Judge Smedley, speaking for the Supreme Court in the case of Edds v. Mitchell, supra [143 Tex. 307, 184 S.W.2d 827], in referring to the holding in the McMurray v. Stanley case and in comparing the Bagley will with the Rhode will, had this to say:

"From the statement of the contents of Mrs. Bagley's will, construed in the McMurray case, and of the contents of the will of O. D. Rhode to be construed here, two material distinctions are apparent. The first is that under the terms of Mrs. Bagley's will her husband took the entire legal estate in the property, whereas O. D. Rhode's will in this case expressly limited the estate devised to his wife to an estate for life.

"As to this first distinction, N. G. Bagley having, under Mrs. Bagley's will, the full legal title to all of the property of her estate, would necessarily have full legal title to the proceeds of sales of that property made by him; and because of the rule that a gift over after a fee is void, a trust for the benefit of the nieces would be imposed upon the specific property that passed under Mrs. Bagley's will, or upon the proceeds of sales of that property, only in the event the will contained very clear evidence of the testatrix' intention that the nieces should have a right to the specific property or to the proceeds. The court, in the McMurray case, found in the will clear evidence of that intention with respect to the specific property, but no evidence of it with respect to the proceeds."

The court in that case further held that the Bagley will gave full power to dispose

of all the property of the testatrix, but made no mention whatever of the proceeds of sale and contained nothing indicating an intention on the part of testatrix that any proceeds of sale should pass to the remainderman, while the Rhode will contained express references to the proceeds of sales.

In the instant case the widow was vested with a fee to the entire property under said will. The testator said nothing about the proceeds of his property in the event of sale or the property purchased with such proceeds forming any part of his residuary estate, or that upon the death of his wife his sisters should share in such proceeds or in such property purchased with the proceeds that were in her possession at that time, nor is there anything in his will from which it can be clearly inferred that it was his intention that they should share in the same. Appellants have cited no case in which a fee was vested in the first taker which holds that the residuary legatee had a right to share in the proceeds from the sale of such property taken under the will.

■ For the reason that the will does not clearly express or indicate an intention upon the part of the testator that his sisters should share in the proceeds from the sale of his property or in the property purchased with the proceeds from such sale, they would be entitled only to receive such property of Andrew J. McClure that was undisposed of and in the possession of his widow at the time of her death.

The court refused to allow the appellants and also their niece, Mrs. Frank Wallace, to testify to certain declarations of Andrew J. McClure to the effect that he wanted the appellants to have what property he had after his wife's death; that he had made his will to that effect, and also that he exhibited to them his will during some of those conversations. This testimony was first offered for the purpose of proving that the testator intended to vest in his wife only a life estate with power of disposition during her life; then they offered said testimony to prove that the will of Andrew J. McClure was made as a result of an agreement between him and his wife to make mutual and reciprocal wills. The appellee interposed many objections to this testimony. Among some of them were that the legal effect of a will cannot be changed by proof of oral declaration of the intention of the maker, and that said declarations are not admissible for the purpose of showing the intent of the deceased; that said testimony was in violation of Article 3716 of Vernon's Ann. Texas Civil Statutes and that it was also an attempt to vary the terms of a written will by extraneous evidence, and that said evidence was hearsay.

■ These declarations, if made, were made long after the execution of the wills of the McClures, and therefore were inadmissible to shed any light upon the situation of the testators at the time of the execution of said wills. As we understand the rule in respect to this question, it is, as heretofore stated, that the intention of the testator must be ascertained from the meaning of the words used in the will, and from those words alone, but when the terms of said will are ambiguous, extraneous evidence showing the surrounding of the testator at the time of the execution of said will may be admitted and considered by the court to determine the sense in which such words were used, but oral declarations of the testator are never admissible to prove what he intended to say but did not say, or what he wished or thought several years later he had said when he executed his will. 44 T.J. p. 762, sec. 192. "Oral declarations of the testator, whether made at the time of executing the will, or prior or subsequently thereto, are inadmissible for the purpose of showing his intention, particularly as to the persons who are to take his estate and the property or amount which each is to receive. However clear they may be, declarations are not admissible to establish an unexpressed intention or to show that the testator did not intend what he expressed in the will. In other words, declarations of the testator may not be received to add to, contradict or explain the contents of the instrument." Judge Critz, speaking for the Supreme Court in the case of Schelb et al. v. Sparenberg et al., 133 Tex. 17, 124 S.W.2d 322, 326, point 4, held:

"Finally, we hold that oral declarations of the testator, whether made at the time of executing the will or prior or subsequent

thereto, were not admissible for the purpose of showing his intent. In other words, declarations of the testator may not be received to add to, contradict or explain the contents of a will." Citing, among other authorities: Heidenheimer v. Bauman, 84 Tex. 174, 19 S.W. 382, 31 Am. St.Rep. 29; Peet v. Commerce & E. S. R. Co., 70 Tex. 522, 8 S.W. 203.

See also: Richardson v. McCloskey, Tex.Civ.App., 261 S.W. 801; Tex.Com. App., 276 S.W. 680.

■ So, we are of the opinion that the court did not commit error in sustaining appellants' exceptions to the evidence because it was incompetent for the purpose of proving that under the will of Andrew J. McClure his wife received only a life estate in the property devised, or that said will was contractual within its terms, or that the same was executed in furtherance of an agreement between McClure and his wife. It is true that these wills were executed on the same day and before the same witnesses, on the same kind of paper and apparently they were written on the same typewriter, but neither made any reference to the other, and neither of said wills used any word or words from which it could reasonably be inferred that said wills were made as a result of any agreement. Andrew J. McClure did not attempt to dispose of the entire community property of himself and his wife, but he devised only his half thereof. The beneficiaries in said wills were not the same, and from their recitals they were in all respects separate and distinct instruments. In the case of Wagnon v. Wagnon, Tex.Civ.App., 16 S. W.2d 366 (writ refused), the late Justice Baugh, speaking for the court, held that "wills of husband and wife executed at same time before same witnesses and containing identically the same provisions, except that each named the other as beneficiary, but not referring to each other, nor reciting that they were executed in consideration of each other or pursuant to agreement, held not mutual, as matter of law, though never revoked." We are of the same opinion concerning the will in this case, that none of the competent evidence admitted or that which was offered and not admitted was sufficient to create a fact issue as to whether the wills in question were made in pursuance to an agreement between the parties that said wills should be mutual and reciprocal. Wyche v. Clapp, 43 Tex. 543; Wanger v. Marr, 165 S.W. 1032; 43 A.L.R. p. 1028, and other authorities cited.

■ Appellee has filed in this court a motion to strike the statement of facts, or in the alternative, for this court not to consider the same, for the alleged reason that they were not filed in the trial court within the time required by law and an extension of time was not granted by the court within the time provided by Rule 381, T. R. C. P. The statement of facts was filed within the time prescribed for the filing of the transcript, and the court having granted an extension, basing the same upon the existence of good cause, we see no reason why the same should not be considered and we are of the opinion that said motion should be overruled.

The evidence introduced by the appellants showing conclusively that the widow, during her lifetime, disposed of all the property received under the will of her husband and that none of said property remained in her possession at the time of her death and she only had in her possession the proceeds from the sale of such property, or property purchased with the proceeds from the sale of same, in which appellants are not entitled to share, we are of the opinion that the court did not err in instructing a verdict for the appellee.

Therefore, the judgment of the trial court is affirmed.